OPINION
Plaintiff-appellant Carmen Haren-Williams, as the Executor of the Estate of Emma P. Schumacher, appeals the decision of the Monroe County Common Pleas Court which granted summary judgment in favor of defendant-appellee Michael Anthony Yonak, Jr. The main issue before us concerns whether a deed granting property to Yonak was properly executed. Included in this analysis are subissues revolving around the notary acting as both notary and one of the two witnesses, the notary helping to guide the grantor's hand, and application of Ohio and/or West Virginia notary law. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS
Grantor, Paul E. Dittoe, entered the Wheeling Park Hospital on March 19, 1998 as he was apparently dying of cancer. On March 24, 1998, a quit-claim deed was executed at this hospital whereby Mr. Dittoe purportedly granted two tracts of land, totaling approximately 124 acres, to Michael Anthony Yonak, Jr. Mr. Dittoe reserved a life estate for himself and Emma Schumacher. The deed had been prepared by Mr. Yonak's current counsel. The deed was notarized by Sheri Harvey, the Director of Medical Records at the hospital. It was witnessed by Ms. Harvey and Cheryl White, a nurse's assistant at the hospital. Under Mr. Dittoe's signature, Ms. Harvey wrote, "Notary helped guide Mr. Dittoe's hand" and initialed this entry. The deed was subsequently recorded in Monroe County, Ohio.
On April 28, 1998, Mr. Dittoe died with a will that named Ms. Schumacher as his residual beneficiary. On March 16, 1999, Ms. Schumacher died with a will naming Carmen Haren-Williams as the residual beneficiary. On October 8, 1999, the executor of Mr. Dittoe's estate executed in favor of Ms. Haren-Williams an assignment of the chose in action regarding the aforementioned deed. Thus, on October 22, 1999, Ms. Haren-Williams, as the executor of Ms. Schumacher's estate, filed a complaint against Mr. Yonak. She wished to invalidate the deed so that the property would be left to Ms. Schumacher as the residual beneficiary of Mr. Dittoe's estate and then to herself as the residual beneficiary under Ms. Schumacher's estate.
After various amendments, three counts were set forth in the complaint. First, the complaint alleged unlawful execution on the grounds that West Virginia law requires two witnesses plus a notary where the grantor cannot sign his own name. Second, the complaint alleged duress and undue influence because the grantor was dying of cancer and under prescription pain pills when he executed the deed. Third, the complaint alleged incompetence to execute a deed.
On May 11, 2000, Ms. Haren-Williams filed a motion for summary judgment on the first count of the complaint. After receiving memoranda on the matter, the court denied the motion for summary judgment. Thereafter, Ms. Haren-Williams voluntarily dismissed counts two and three of her complaint. An agreed stipulation of facts was filed on January 4, 2001. Among other things, the parties agreed that the affidavits of the notary and the witness could be accepted in lieu of live testimony. These affidavits related that neither affiant remembered much about the grantor or the execution. When asked why she wrote that she helped guide the grantor's hand, the notary replied that she did not recall "but possibly to steady it." She also stated that she asks every patient if they fully understand what they are signing before she notarizes any document.
On February 27, 2001, Ms. Haren-Williams filed a renewed motion for summary judgment. Mr. Yonak filed a motion to dismiss under Civ.R. 12(B)(6) which the court converted to a motion for summary judgment by request and agreement of the parties. On May 22, 2001, the court granted summary judgment for Mr. Yonak. Ms. Haren-Williams filed timely notice of appeal.
 WEST VIRGINIA LAW
Ms. Haren-Williams cites West Virginia Code Section 29C-5-101 (b)(2) which states that a certificate of acknowledgment by an individual who is unable to write his name should be notarized with language substantially similar to the following: "I signed his name at his request and in his presence on the within [deed] and he acknowledged to me and the two witnesses who have signed and printed their names and addresses hereto, that he made his mark on the same for the purpose therein stated." Ms. Haren-Williams reads this form as prohibiting the notary from acting as one of the two witnesses in a case where the grantor is unable to write. She also interprets the notary's act of helping to guide the grantor's hand in this case as the situation contemplated under 29C-5-101(B)(2), i.e., where the grantor cannot write. Hence, Ms. Haren-Williams concludes that the deed was not duly executed as it was attested by only one witness besides the notary.
 OHIO LAW
Pursuant to O.R.C. 5302.11, a quit-claim deed is to be duly executed in accordance with Chapter 5301 as is any other deed. O.R.C. 5301.01 sets forth the criteria by initially mandating that a deed is signed by grantor. Additionally, the grantor must acknowledge his signature by signing before two individuals who bear witness to the signing. Those two witnesses then subscribe their names to an attestation. This statutory section further provides that the signing shall be acknowledged by the grantor before a certain type of individual, including a notary public, who shall certify the acknowledgment and subscribe his name to the acknowledgment. A notary can both notarize the deed's acknowledgment and sign the attestation as one of the two witnesses to the signature. WayneBldg Loan Co. v. Hoover (1967), 12 Ohio St.2d 62, 64-66, citing Readv. Toledo Loan Co. (1903), 68 Ohio St. 280. Proceeding with our Chapter 5301 analysis, O.R.C. 5301.06 provides that a deed conveying land in Ohio that was executed and acknowledged in another state, in conformity with the laws of that state or in conformity with the laws of Ohio, is as valid as if executed within this state, in conformity with O.R.C. 5301.01
to 5301.04.
Mr. Yonak concludes that even assuming arguendo there was a failure to comply with West Virginia law, this is irrelevant since O.R.C. 5301.06
has an alternative compliance basis. He focuses on the fact that the deed was executed and acknowledged in conformity with the laws of Ohio. Ms. Haren-Williams responds by arguing that conformity with the laws of Ohio requires conformity with other parts of the Revised Code besides Chapter 5301.
 UNIFORM RECOGNITION OF ACKNOWLEDGMENTS ACT
Ms. Haren-Williams cites O.R.C. 147.51, which is part of the Uniform Recognition of Acknowledgments Act. This statute establishes that notarial acts may be performed outside Ohio for use in Ohio with the same effect as if performed by a notary of Ohio by certain persons authorized pursuant to the laws and regulations of the other state, including a notary authorized to perform notarial acts in the state where the act is performed. This statute also defines "notarial act" as an act which the laws and regulations of a state authorize a notary of that state to perform, including the administration of oaths and affirmations, taking of proof of execution and acknowledgment of instruments, and attesting documents. Ms. Haren-Williams concludes that the notary may have been authorized to perform notarial acts in West Virginia, but she was not authorized to be a witness to this deed where she helped guide the grantor's hand and where she thus should have used the form requiring two witnesses besides herself, citing back to W. Va.C. 29C-5-101(b)(2).
Mr. Yonak then cites O.R.C. 147.54 which states that the form of a certificate of acknowledgment used by a person whose authority is recognized under O.R.C. 147.51 shall be accepted in this state if it is in a form prescribed by the laws of this state or the laws of the place where it was taken. Ms. Haren-Williams reiterates her argument that the notary had no authority to do the particular act she did.
Both Ohio and West Virginia have enacted the Uniform Recognition of Acknowledgments Act. O.R.C. 147.51 to 147.58; W. Va.C. 39-1A et seq. The purpose of the Act is to establish a simplified and certain form for taking acknowledgments, both within and without the state, and to specify how acknowledgments and other notarial acts taken out of the state can be taken so as to be recognized in the enacting state. Mid-American Nat.Bank. Trust Co. v. Gymnastics Internat., Inc. (1982), 6 Ohio App.3d 11,13, citing the prefatory note of the National Conference of Commissioners on Uniform State Laws, 14 U.L.A. 197. The sections of the Act "provide an additional method of proving notarial act and do not diminish or invalidate recognition accorded to notarial acts by other laws or regulations of this state." O.R.C. 147.56.
 ANALYSIS
Firstly, the use of the form itself is not mandatory under W. Va. Code29C-5-101(b)(2). Furthermore, it does not appear that helping to guide a hand to steady it equates with being unable to write one's name. As such, it does not appear that the special West Virginia Code section would be applicable.
Regardless, there is no contention that the deed did not comply with O.R.C. 5301.01. As a result, O.R.C. 5301.06 provides that the deed executed and acknowledged in West Virginia is valid because it conforms with Ohio law such as O.R.C. 5301.01. Moreover, the Uniform Recognition of Acknowledgments Act is an additional method to validate a notarial act, not the sole method. O.R.C. 147.56.
Additionally, Ms. Haren-Williams is interpreting the phrase "authorized to perform notarial acts" too narrowly. See O.R.C. 147.51 (characterizing the phrase at issue as requiring general authority by listing broad duties such as administering oaths and affirmations, taking proof of execution and acknowledgments and attesting documents). See, also, W.Va.C. 29C-3-101 (stating that every notary is empowered to take acknowledgments). The phrase "authorized to perform notarial acts" contemplates that the broad act, such as taking acknowledgments, will be authorized by the laws of the state of performance or that the person at issue has authority to act as a notary; the phrase does not mean that the registered notary strictly complied with every state procedure for performing the act. A faulty execution does not equate with a lack of authority to perform notarial acts.
The deed which contained the attestation of one witness and the acknowledgment of a notary who also attested the signature as the second witness complies with Ohio law. The fact that it was executed in West Virginia but may not have complied with that state's execution laws does not invalidate the deed that conveys Ohio land. Accordingly, judgment was properly granted in favor of Mr. Yonak as a matter of law.
 ALTERNATIVE ARGUMENTS
In her summary judgment motion, Ms. Haren-Williams alleged that grantor "was not capable of voluntarily executing the documents." However, she had previously dismissed the duress, undue influence and incompetence counts from her complaint; all that remains is an argument about unlawful execution by reason of a missing witness.
Ms. Haren-Williams then associates this involuntariness argument with her theory that the notary acted as an agent by materially participating in the signing and thus the notary cannot acknowledge her own act of signing the grantor's name. She concludes that the notary could act as neither a witness nor a notary due to her status as an agent. She opines that there is no difference between the a notary who helps guides a grantor's unsteady hand and one who simply signs the grantor's name for him.
The parties stipulated that no live testimony of the notary or the witness would be presented. The deed discloses that the notary helped guide the grantor's hand. The notary's affidavit opines that she had to help guide the hand to steady it. There is no indication that the notary acted as the grantor's agent or that she materially participated in the signing of the grantor's name. The notary was not an interested party to the conveyance. Even under the special West Virginia section for those unable to write, the notary who signs the grantor's name for him is still permitted to act as the notary.
A section of the Uniform Commercial Code may be of assistance; O.R.C.1303.41 defines a signature as a name, a word, a mark or symbol executed or adopted by a person with the present intention to authenticate a writing. When a disinterested notary helps to guide the grantor's hand and there is no allegation that he did not have the present intention of signing and making the land conveyance, the signature is valid. SeeRobinson v. Harmon (1958), 107 Ohio App. 206, 208 (holding that a guided or assisted signature is valid if it is the will of the testator that the document be signed).
In Ohio, disqualification of a notary is not presumed; the notary must be directly interested or there must exist an allegation of bad faith, undue advantage, involuntariness or fraud or in order for an defective execution claim to survive. See, e.g., State ex rel. Reed v. Malrick
(1956), 165 Ohio St. 483, 489; Underwood v. Rutan (1920), 101 Ohio St. 306,312; Read, 68 Ohio St. 280. Moreover, even a defective acknowledgment passes title as against the grantor and his heirs, in the absence of fraud; it just is not good against a subsequent bona fide purchaser.Citizens Nat. Bank in Zanesville v. Denison (1956), 165 Ohio St. 89,94-95. See, also, Cincinnati Entertainment Assoc., Ltd. v. Hamilton Cty.Bd. of Commrs. (2001), 141 Ohio App.3d 803, 814; Seabrooke v. Garcia
(1982), 7 Ohio App.3d 167, 169. Due to plaintiff's dismissal of the first and second counts, there is no remaining allegation that the grantor did not intend to execute the deed or did so involuntarily or under an undue or fraudulent influence.
In conclusion, the execution does not appear to be defective under Ohio law merely because the notary helped guide the grantor's hand. For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.